55 So.2d 189 (1951)
SUDDUTH REALTY CO., Inc.
v.
WRIGHT.
Supreme Court of Florida, Special Division A.
November 27, 1951.
Archie Clement, Tarpon Springs, for petitioner.
Stuart B. Warren, St. Petersburg, for respondent.
*190 THOMAS, Justice.
A bill of complaint was filed by the respondent against the petitioner and a decree pro confesso was seasonably entered. A motion to set aside the decree pro confesso was filed but never decided.
Afterward the defendant, petitioner now, filed an answer, evidently without leave of court; then the plaintiff, respondent here, applied for leave to amend the bill and at the same time filed a proposed amendment, without the court's having ruled on the application. Soon afterward the defendant formally objected to the filing of the amendment to the pleading, but the court did not rule upon the objections.
There the matter rested for about seven years when the chancellor, of his own motion, dismissed the cause for lack of prosecution. Section 45.19, Florida Statutes 1941, and F.S.A.
Five months later the plaintiff filed a petition for reinstatement introducing into the record for the first time the intelligence that at a hearing on some date not stated before Honorable T. Frank Hobson, then chancellor, on the objections to amending the bill an oral request was made to transfer the cause to the law side of the court and that no such order of transfer was ever entered, or ruling made on the application for leave to amend. It was further represented that some time or other afterward the defendant had promised to furnish the plaintiff certain "data in regard to some disposition of this case," awaiting which the plaintiff had deferred prosecution, and by relying on which he had been "lulled into a sense of security," and so on. Upon entertaining this petition the chancellor, successor of Judge Hobson, observed that the motions for permission to amend the bill and to transfer the cause to the law side of the court had been submitted to Judge Hobson who had failed to rule upon "that Motion," and the chancellor announced that "had the Court known that it was in the bosom of the Court, the case would not have been dismissed." (Italics supplied.) This was 2 August, 1951, more than three years after Judge Hobson had become a member of the Supreme Court.
We think the order reinstating the cause was improperly entered. The obvious purpose of the statute is to speed decision of disputes by penalizing those who would allow their litigation to become stagnant. This very matter lay dormant for many years during which the plaintiff was charged with notice that the period fixed in the law was inexorably expiring. Yet it was only after the chancellor dismissed the cause that the plaintiff was galvanized into action. There is little need to detail all the things that might have been done to perfect the pleadings and effectuate a trial. We will go, instead, direct to the "good cause" the plaintiff was bound to show in order to be rewarded with an order of reinstatement. It consisted of two aspects, the unfulfilled promise of the defendant to furnish certain information and the failure of the judge to rule on the motion to transfer; also, perhaps, the application for leave to amend.
The first of these is lacking in merit. The only record of any such promise or undertaking on the part of the defendant was the statement in the petition for reinstatement and it is so lacking as to date, description and other detail as to be of small value. Time was passing while such data was not forthcoming and the plaintiff could have protected his position as movant in the case, and therefore more or less in control of its progress, by proceeding as if no favor would be shown him by his opponent.
We think, however, that there is no need to pursue this matter further because it seems to have been the other phase of the motion that influenced the chancellor in entering the order now challenged. He reinstated because he felt the matter of the motion for transfer, and possibly the application to amend, was in the court's "bosom."
Although the objection to amending the bill was on file, the only place in the record that any reference appears to the motion to transfer was the statement in the petition; no formal motion was filed or presented, and for that matter there is no entry whatever concerning the hearing on the objections. *191 Even assuming that such a request could be made orally and thus reposed in the breast of the court and that the matter of the objections could likewise be deposited, no effort seems ever to have been made to get the chancellor to disgorge them and enter orders during the following seven years. On the other hand, if the time be computed to the day the judge left the position to become a member of this court, four years elapsed. No ruling was sought either from his successor. We think that to state the situation furnishes an illustration of what the statute was intended to proscribe. Failure to secure a ruling for such long periods would indicate indifference to pressing a decision in procedure preliminary to the trial. No reason whatever appears in the record from which to suspect that the plaintiff suffered from any dilatoriness on the part of the court. Had he presented a formal motion for transfer and requested a ruling, he would doubtless have got it "forthwith" as the rule contemplates; had the application and the request been renewed before the successor chancellor, we will presume immediate disposition would have ensued.
We interpret the chancellor's term "in the bosom of the Court" to mean that the matters assuming that they were properly presented, were within the mind of and subject to the control of the court. We have no difficulty agreeing with that position from a theoretical standpoint, but we do see a real objection to its practical application here. Judge Hobson became a justice of the supreme court, hence ceased to function as a chancellor, 6 April, 1948. Even though the court as such still controlled the case when Judge Hobson became Justice Hobson, there was no record whatever of the request to transfer or of anything that happened at any hearing where that matter was discussed or the objections to the amended bill considered. So any judicial information about this situation was in the mind of the chancellor who had departed.
Under such conditions, it seems to us it was incumbent on the movant to renew his request and his argument on the objections before another chancellor. Ample time for the purpose was afforded because nearly three years elapsed before the dismissal. During that time no effort was made to get the ear of a chancellor qualified to hear, consider and decide the question.
In our opinion the petition should be granted and the order of reinstatement should be, and it is, quashed.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.